UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES LEO DAVIS,

               Petitioner,                             Case Number 1:09-CV-10748
                                                   Honorable Thomas L. Ludington

v.

BARRY D. DAVIS, WARDEN,

               Respondent.

_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE
OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner James Leo Davis, confined at the Newberry Correctional Facility in Luce County, Michigan, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions of carjacking, Mich. Comp. Laws § 750.529a, felonious assault, Mich. Comp. Laws § 750.82, assault with intent to do great bodily harm, Mich. Comp. Laws § 750.84, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. Petitioner was found guilty of these crimes following a bench trial in the Wayne Circuit Court and was sentenced to prison for an effective term of twenty-two to thirty-six-and-a-half years. The petition raises six claims: (1) Petitioner did not voluntarily waive his right to trial by jury; (2) Petitioner was denied his right to a ruling on the voluntariness of his statement to police; (3) the identification of Petitioner at trial by prosecution witnesses was the result of a suggestive identification procedure; (4) the trial court did not find Petitioner guilty beyond a reasonable doubt; (5) Petitioner's carjacking conviction must be set aside where the trial court found sufficient evidence as to the affirmative defense that he acted under duress; and (6) Petitioner

was deprived of his Sixth Amendment right to the effective assistance of counsel.  Petitioner's

first four claims are without merit.  His fifth and sixth claims are barred from review by his state

court procedural default.  Accordingly, the petition will be denied.

# I

This relevant facts relied upon by the Michigan Court of Appeals, which are presumed

correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1), are as follows:

> At approximately 4:00 or 5:00 p.m. on April 6, 2003, Adrian Hanceri was
> driving his car when he saw defendant outside of a parked car talking to
> somebody in the car.  When the driver of the blue car suddenly accelerated and
> began driving away, defendant shot a gun three times at the back of the car and
> pursued on foot.  Defendant then looked toward Hanceri and shot at him, hitting
> him in the arm.  Defendant then continued running after the driver of the blue car
> and shot at the blue car several more times.

> Defendant made his way to a gas station, where he saw an occupied car.
> Hazel DeLong was outside the car to pump the gas while David Holesh and their
> eleven-month-old daughter were in the car.  Defendant approached the car and
> told Holesh to get out.  As Holesh was climbing out of the car, defendant shot into
> the car three or four times, hitting Holesh once on his left side.  DeLong quickly
> retrieved her baby from the car while defendant got into the car.  Once the baby
> was out of the car, defendant drove away.

> Later that day, when defendant allegedly entered a house while pointing a
> gun at a child's head, and [sic] the occupants of the house beat defendant into
> submission and called the police.  While defendant was in the hospital recovering
> from his wounds, a police officer interviewed defendant.  Defendant told the
> officer that he and his friend Darren were driving around smoking marijuana in
> defendant's rental car when Darren dropped defendant off in a gang
> neighborhood.  Defendant stated that after Darren drove away with the car, some
> men started shooting their guns at defendant.  When defendant approached the
> man and asked for help, the two began fighting over control of the man's gun and
> one or two shots went off.  Defendant got into the car and drove away after the
> woman retrieved her baby from the back of the car.  After making his statement,
> defendant refused to sign the written statement.

> At the preliminary examination, defendant was identified by Hanceri and
> Holesh.  Defendant filed a motion to suppress the identifications, arguing that the
> identifications were unduly suggestive because he was wearing a prison jumpsuit
> at the time.  Defendant also filed a motion for a Walker hearing, arguing that his
> statements to police were not voluntarily given.  At the Walker hearing, defendant

-2-

testified that he never made a statement to police.  The trial court determined that because defendant denied actually making the statement, it was not required to decide the voluntariness of defendant's statement to police.  The trial court denied defendant's motion to suppress his statement to police and defendant's motion to suppress identification.

At the bench trial, the trial court found defendant guilty of felonious assault for the shooting of Hanceri, assault with intent to do great bodily harm less than murder for the shooting of Holesh, carjacking for the taking of Holesh's car, felon in possession of a firearm, and felony-firearm.

*People v. Davis*, No. 252145, 2005 WL 544241,2005 Mich. App. LEXIS 609, *2-4 (Mich. Ct.

App. Mar. 8, 2005).

The court sentenced Petitioner to concurrent terms of twenty-two to thirty-four-and-a-half years for the carjacking conviction, one to four years for the felonious assault conviction, one to ten years for the assault with intent to commit great bodily harm conviction, and one to five years for the felon in possession of a firearm conviction. The court also sentenced Petitioner to a consecutive two-year term for the felony-firearm conviction.

Petitioner appealed, raising five claims.  First, he asserted that he is entitled to a new trial as a result of the trial judge reading the transcript of the preliminary examination.  Second, he asserted that the trial court's ruling following the Walker hearing was erroneous.  Third, he asserted that the identification of the petitioner by witnesses violated his constitutional rights requiring reversal and a dismissal of the charges.  Fourth, he asserted that trial counsel did not provide effective assistance.  And fifth, he asserted that the trial court employed a quantum of proof less than beyond a reasonable doubt.  In an unpublished opinion, the Michigan Court of Appeals affirmed .  *Id.*

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. By standard form order, the application for leave to appeal was denied. *People v. Davis*, 474 Mich. 973 (2005) (unpublished table decision).

Petitioner returned to the trial court and filed a motion for relief from judgment. The motion raised four claims. First, Petitioner asserted, he is entitled to relief from judgment on his carjacking conviction because the trial court misapplied the law regarding the duress defense Second, Petitioner asserted, he was denied effective assistance of trial counsel. Third, Petitioner asserted, he was denied his right to the effective assistance of counsel on appeal. And fourth, Petitioner asserted, the trial court abused its discretion under Mich. Comp. Laws § 770.1 because it appears that justice has not been done.

On April 3, 2007, the trial court denied the motion. The court explained that "pursuant to Michigan Court Rule 6.508(D)(3)(b), defendant has failed to establish good cause and actual prejudice that supports his claim." Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. The application was denied "for failure to establish entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Davis*, No. 284279 (Mich. Ct. App. May 23, 2008). Petitioner applied for leave to appeal to the Michigan Supreme Court; it also denied relief under Rule 6.508(D). *People v. Davis*, 482 Mich. 1063 (2008) (unpublished table decision).

## II

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which governs this case, permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §
2254(d)(1)–(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state
court does not justify issuance of the writ; rather, the state court's application of federal law
"must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21(2003)
(quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally,
this Court must presume the correctness of state court factual determinations. 28 U.S.C. §
2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person
in custody pursuant to the judgment of a State court, a determination of a factual issue made by a
State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir.
1996) ("The court gives complete deference to state  court findings of historical fact unless they
are clearly erroneous.").

To be "contrary to" clearly established precedent, the Supreme Court explains, the state
court decision must have "court applie[d] a rule that contradicts the governing law set forth in
our cases. . . . A state-court decision will also be contrary to this Court's clearly established
precedent if the state court confronts a set of facts that are materially indistinguishable from a
decision of this Court and nevertheless arrives at a result different from [the Court's] precedent."
*Williams*, 529 U.S. at 405-06.

A state court decision involves an "unreasonable application" of clearly established
precedent, the Court explains, "if the state court identifies the correct governing legal principle
from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's
case." *Id*. at 413. The Court cautions, however, that an unreasonable application of federal law
is different from an incorrect application of federal law. Unanimously emphasizing the limited
nature of this review in *Harrington v. Richter*, 131 S. Ct. 770 (2011), the Court reiterated that

AEDPA imposes a highly deferential standard for evaluating state-court rulings, writing: "A state court's determination that a [petitioner's] claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 785–86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

### III

### A

Petitioner first asserts that he did not voluntarily waive his right to a jury trial because the trial court failed to inform Petitioner that it had read the transcript from the preliminary examination.

The right to a trial by jury is a fundamental right, a cornerstone of the American system of criminal justice. *See Duncan v. Louisiana*, 391 U.S. 145, 154 (1968). It is a right that may be waived, however, if such waiver is knowing, voluntary, and intelligent. *Patton v. United States*, 281 U.S. 276, 312–13 (1930). In *Lott v. Coyle*, 261 F.3d 594 (6th Cir.2001), the Sixth Circuit set forth the level of knowledge a defendant must have to validly waive a right to a jury trial:

> A waiver may be voluntary, knowing, and intelligent if the defendant has a minimum amount of knowledge concerning his jury trial right and the mental capacity to understand the implications of the waiver of that right. Although a defendant need not have a detailed, technical knowledge of this right, "[a] defendant is [deemed] sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, [that] he may participate in the selection of the jurors, [that] the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right." We did not, however, adopt a mandatory rule requiring trial courts to interrogate defendants prior to accepting a jury trial waiver, but instead, offered a "suggestion" that district courts personally inform defendants of the "benefits and burdens of jury trials on the record prior to accepting a proffered waiver."

*Id.* at 615 (internal citations omitted) (quoting *United States v. Martin*, 704 F.2d 267, 273 (6th Cir. 1983)).

On the first morning of Petitioner's trial, prior to selecting a jury, the trial court heard and denied Petitioner's motion challenging the in-court identification that occurred at the preliminary examination. The Court also heard and denied Petitioner's motion to suppress his statement to police. By the time these matters were concluded, insufficient time remained to select a jury that day. Accordingly, the jury venire was brought into the courtroom, placed under oath, and then excused for the day. Defense counsel then informed the court that Petitioner would waive his right to a jury trial. The trial court then conducted the following colloquy:

| | |
|---|---|
| The Court: | All right Mr. Davis, you understand that you have the right to have a jury trial? I mean, in fact, they were here earlier today. You understand that right? |
| Petitioner: | Yes, Your Honor. |
| The Court: | By having a waiver trial, you give up the right to have that jury and we do what we call a bench or waiver trial. Do you understand that? |
| Petitioner: | Yes, Your Honor. |
| The Court: | Anybody forcing you to do that? |
| Petitioner: | No, Your Honor. |
| The Court: | Okay. Are you giving up your right to a jury trial freely and voluntarily? |
| Petitioner: | Yes, Your Honor. |
| The Court: | Okay. And let me get you a Waiver of Trial by Jury form. And you've done this after discussing it with counsel, and you believe that it's in your best interests to proceed with bench as opposed to jury, correct? |
| Petitioner: | Yes, Your Honor. |

This record demonstrates that Petitioner had an adequate understanding of his jury trial right and the capacity to understand the implications of the waiver of that right. He had personally witnessed the jury venire be sworn-in and instructed to report the following morning for the selection hearing. He acknowledged that he decided to waive his right to a jury trial on the advice of counsel and was doing so freely, voluntarily, and intelligently.

Moreover, Petitioner does not claim that he did not understand his right to a jury trial. Rather, he claims that he was not informed that the trial court had reviewed the preliminary examination transcript. However, there is no federal or state requirement for a trial court to inform Petitioner that he reviewed the preliminary examination transcript before accepting a waiver. The case relied on by Petitioner, *People v. Ramsey*, 385 Mich. 221 (1971), simply stands for the common-sense proposition that a trial court cannot use evidence presented only at the preliminary examination to support its findings after conducting a bench trial. Petitioner's claim for habeas relief on this ground will be denied.

**B**

Petitioner next asserts that he was denied his right to a ruling from the trial court on his motion to suppress his statement to police.

At the suppression hearing, prosecution witnesses testified about the circumstances of obtaining Petitioner's statement at the hospital. Petitioner told an officer that his car had been stolen and that when he approached a car at a gas station for help, a man pointed a gun at him. After a struggle, he was able to drive away in the man's car and was then attacked again at a house. Petitioner, on the other hand, testified that he did not make any statement. The trial court ruled that it was not required to rule on the voluntariness of the statement because Petitioner denied making one. Defense counsel agreed, essentially abandoning the suppression motion.

On direct appeal, Petitioner asserted that he was entitled to a ruling on the suppression motion despite the fact he denied making the statement and that his counsel was ineffective for acquiescing in the erroneous ruling. The Michigan Court of Appeals agreed, finding that under *Boles v. Stevenson*, 379 U.S. 43 (1964) and *Lee v. Mississippi*, 332 U.S. 742 (1948), Petitioner was entitled to argue that he did not make the statement and that, even if he did, it was

-8-

involuntary.  The state appellate court further found that Petitioner's trial counsel performed deficiently for abandoning the motion.  The court nevertheless concluded that the error was harmless, explaining:

> [D]efendant has not shown that he was prejudiced by defense counsel's error. The evidence of defendant's guilt independent of his statement was overwhelming.  Three eyewitnesses directly implicated defendant in the criminal activity.  Defendant did not present any evidence contradicting this testimony other than his statement to police, where he denied committing the shootings. Thus, the use of defendant's statement at trial did not adversely prejudice him in that it did not affect the outcome of the proceedings.

*Davis*, 2005 Mich. App. LEXIS 609, at *12.  The court elaborated:

> If anything, the statement helped defendant, as the trial court accepted portions of defendant's statement and consequently found defendant guilty of lesser offenses (e.g., the trial court believed the portion of defendant's statement that defendant shot Holesh because he believed that Holesh was reaching for a gun. Because of this finding, the trial court convicted defendant of assault with intent to do great bodily harm less than murder rather than assault with intent to commit murder).

*Id*. at *12 n.4.

 In *Fry v. Pliler*, 551 U.S. 112 (2007), the Supreme Court held that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993), whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman v. California*, 386 U.S. 18 (1967)."  551 U.S. at 121-22 (citations omitted). Under  *Brecht*, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Fry*, 511 U.S. at 116 (quoting *Brecht*, 507 U.S. at 631).

    Here, the error in considering Petitioner's statement to police did not have a substantial and injurious effect in determining the trial court's verdict.  The statement was not a confession. Although it placed Petitioner at the scene of the crime, it attempted to provide an exculpatory

version of events.  Moreover, the evidence presented at trial overwhelmingly demonstrated that Petitioner was the perpetrator of the crimes.  All three victims of the first incident identified him. Likewise, the second incident concluded when his attempt to gain entry into a house at gunpoint was thwarted by the occupants, who subdued him until the police arrived and arrested him. Petitioner is not entitled to habeas relief with respect to this claim.

## C

Petitioner's third claim asserts that the trial court erred in allowing two of the victims to identify him at trial because they were subjected to a improperly suggestive identification procedure during the preliminary examination.

The Due Process Clause protects the accused against the introduction of evidence that results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977).  A conviction based on identification testimony that follows a pretrial identification procedure violates the defendant's constitutional right to due process "if the . . . procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Simmons v. United States*, 390 U.S. 377, 384 (1968).  It is the likelihood of misidentification that violates a defendant's due process right. *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

The Supreme Court has identified five factors to consider in determining the reliability of identification evidence: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation.  *Id*. at 199–200.  A criminal defendant has the initial burden of proving that the

identification procedure was impermissibly suggestive.  If a defendant meets his burden, the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure.  *See United States v. Wade*, 388 U.S. 218, 240 n.31 (1967); *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004).  If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred.  Provided that there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification.  *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992); *Johnson*, 344 F. Supp. 2d at 1090.

On direct appeal, the Michigan Court of Appeals rejected Petitioner's argument, explaining in pertinent part:

> [D]efendant was not identified at a live or photographic lineup, but was identified by Hanceri and Holesh at the preliminary examination. Because defendant was wearing a prison jumpsuit in the courtroom and was sitting with defense counsel, we conclude that the trial court erred in determining that the preliminary examination identifications were not unduly suggestive.
>
> However, despite the suggestiveness of the preliminary examination identifications, the evidence at trial sufficiently demonstrated independent bases for the identifications.  Hanceri testified that he was driving slowly and was close to the perpetrator when the perpetrator turned his head toward him and looked at him. Holesh saw the perpetrator as the perpetrator approached his car and the perpetrator talked to Holesh from a short distance.  After the perpetrator shot Holesh, Holesh saw the perpetrator get into his car and sit there while DeLong retrieved the baby from the car.  Holesh testified that the encounter lasted about five minutes and that he got a good look at the perpetrator.  Holesh testified that he had no doubt that defendant was the perpetrator.
>
> Both Hanceri and Holesh identified defendant at the preliminary examination, which was seventeen days after they witnessed defendant commit the crimes.  This is "a relatively short span of time, that does not reduce the reliability" of the identification.  Both witnesses again positively identified defendant at trial.  Neither witness ever misidentified defendant at any time, and neither had doubts about defendant's identity.  Under the totality of the

> circumstances, we conclude that there is substantial reliable testimony that
> constitutes an independent basis for identifying defendant.

*Davis*, 2005 Mich. App. LEXIS 609, at *15-17 (internal citations, footnotes, and quotation marks

omitted) (quoting *People v Colon*, 233 Mich. App. 295, 305; 591 N.W.2d 692 (1998)).

This determination does not contravene or unreasonably apply federal law. Even if the

identification at the preliminary examination constituted an unduly suggestive identification

procedure, the Michigan Court of Appeals reasonably weighed the *Biggers* factors in favor of the

reliability of the identification.

First, Holesh had an excellent opportunity to observe Petitioner. Holesh saw Petitioner as

he approached him at the gas pump. The two engaged in a conversation from a short distance

before the struggle began. Hanceri similarly testified that he was driving slowly as he passed

and saw Petitioner look at him. Moreover, both witnesses' testimony indicates that they were

paying a great deal of attention to Petitioner. Holesh, as the victim of a violent encounter, had

good reason to focus on his would-be assailant. *See, e.g., United States v. Crozier*, 259 F.3d 503,

511 (6th Cir. 2001). Likewise, Hanceri's attention was drawn to Petitioner when he saw

Petitioner shoot towards a car. Third, the witnesses did not inaccurately describe Petitioner.

Fourth, both victims stated that they were sure of their identification. Finally, a relatively short

length of time, seventeen days, elapsed between the time of the crime and the confrontation. In

sum, the relevant factors reasonably support the state court's determination. Petitioner is not

entitled to habeas relief on this ground.

## D

Petitioner's fourth claim asserts that the trial court failed to use the beyond-a-reasonable-

doubt standard when it found him guilty of assault with intent to cause great bodily harm.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). In a jury trial, this right is protected when the trial court instructs the jury that it may not find the defendant guilty unless it determines that the prosecution has proven all the elements of the offense beyond a reasonable doubt. *Victor v. Nebraska*, 511 U.S. 1 (1994). A trial court conducting a bench trial, however, need not make explicit the standard it is following because it is presumed to follow the law in reaching a verdict. *See Walton v. Arizona*, 497 U.S. 639, 653 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002). Petitioner has failed to cite to any authority indicating that there is a constitutional right to have a trial court specifically state that it is employing the beyond-a-reasonable-doubt standard when it makes its findings after a bench trial. *See Middlebrooks v. Conway*, No. 05-CV-0004, 2009 U.S. Dist. LEXIS 27636, at *9–11 (W.D.N.Y. Mar. 30, 2009).

Petitioner is correct that trial court observed that it thought it was "more likely" that Petitioner brought the gun to the scene of the shooting at the gas station. But as correctly noted by the state appellate court, bringing the gun to the scene of the shooting was not one of the required elements of the crime. This isolated statement does not show that the trial court employed a lower standard of proof than required. Petitioner is not entitled to habeas relief on this ground.

**E**

Petitioner's remaining two claims were presented in his motion for relief from judgment and the appeal that followed it. Respondent argues that these claims are barred from review because Petitioner procedurally defaulted them in the state courts.

-13-

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Such a default may occur if the state prisoner fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, such as making a contemporaneous objection or filing a motion for a directed verdict. *See Simpson v. Sparkman*, 94 F.3d 199, 202–03 (6th Cir. 1996). Procedural default will bar consideration of the merits of a federal claim if the state rule is actually enforced and is an adequate and independent ground for the state court's decision. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Monzo v. Edwards*, 281 F.3d 568, 575–76 (6th Cir. 2002).

Here, the Michigan Court of Appeals and the Michigan Supreme Court, the last state courts rendering judgment on these claims, both denied relief, in standard form orders, on the grounds that the petitioner had failed to demonstrate entitlement to relief under Michigan Court Rule 6.508(D). The Sixth Circuit holds that the Court must "look through" the form orders used by the Michigan appellate courts as they are ambiguous as to whether they refer to a procedural default or the denial of right on the merits. *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). In this case, the trial court specifically relied on Michigan Court Rule 6.508(D)(3) in denying relief when it found that Petitioner had not demonstrated good cause or prejudice. Under these circumstances, Petitioner's post-conviction claim is procedurally defaulted. *See Ivory v. Jackson*, 509 F. 3d 284, 292–93 (6th Cir. 2007); *see also Howard v. Bouchard*, 405 F. 3d 459, 477 (6th Cir. 2005).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless the petitioner can demonstrate "cause" for the default and

-14-

actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750–51. If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). In extraordinary cases, those alleging actual innocence, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner support the allegations of constitutional error with new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Moreover, actual innocence, which would permit collateral review of a procedurally defaulted claim, requires factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

The only candidate for a "cause" argument in this case would be an allegation that Petitioner's appellate counsel was ineffective for failing to raise these two claims during his appeal of right. It is well-established, however, that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983). The United States Supreme Court explains:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments — those that, in the words of the great advocate John W. Davis, 'go for the jugular,' — in a verbal mound made up of strong and weak contentions." *Id*. at 753 (internal citations omitted). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th

Cir. 1990).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," an issue obvious from the trial record which would have resulted in a reversal on appeal.  *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003) (internal citations omitted).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims presented in his post-conviction motion for relief from judgment. Appellate counsel filed a substantial brief which raised several claims on direct appeal.  In fact, these claims form Petitioner's leading claims in his motion before this Court.  Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising other claims was deficient or unreasonable so as to amount to cause that would excuse any default.  *See Grant v. Rivers*, 920 F. Supp. 769, 782 (E.D. Mich. 1996).  Because Petitioner has failed to show cause, the Court need not address the issue of prejudice.  *See Smith*, 477 U.S. at 533.

Additionally, Petitioner has failed to demonstrate that a fundamental miscarriage of justice would result from a failure to review his defaulted claims.  He raises no claims of actual innocence.

## IV

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.§ 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v.*

*McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Id*. at 336-37.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted.  *Id*.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

In this case, Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability is not warranted in this case.  Petitioner will also not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous.  *See* Fed. R. App. P. 24(a).

**V**

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

-17-

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed in forma pauperis on appeal is **DENIED**.

Dated: February 16, 2012

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 16, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS

---